A09A2121. RICHARDSON v. PHILLIPS.
(690 SE2d 918)

BERNES, Judge.

Bobby Richardson, Sr., commenced this action seeking declaratory relief and an order from the trial court to remove county commissioner Frankie C. Phillips from office in accordance with a local act and OCGA § 36-1-14.[1] The trial court denied summary judgment to Richardson and granted summary judgment to Phillips after concluding that Richardson's claims were moot. For the reasons discussed below, we conclude that Richardson's cause of action for declaratory relief was moot, but not his separate statutory cause of action seeking to have Phillips removed from office. Accordingly, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

> Summary judgment is appropriate if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party.

(Citations and punctuation omitted.) *Ins. Co. &c. of Pennsylvania v. APAC-Southeast*, 297 Ga. App. 553 (677 SE2d 734) (2009). See also OCGA § 9-11-56 (c).

So viewed, the record shows that in 1995, before she was elected as a county commissioner in Miller County, Phillips purchased a building and lot on the courthouse square, where she operated an

---

[1] After concluding that this case cannot be construed as an action seeking the remedy of quo warranto, the Supreme Court of Georgia transferred the appeal to this Court. See *Richardson v. Phillips*, 285 Ga. 385 (677 SE2d 117) (2009).

antique store (the "Property"). The owner at the time of the purchase, Hilda J. Grow, self-financed the sale of the Property. Phillips made a cash down payment and executed a promissory note in the principal amount of $42,000 and a deed to secure debt in favor of Grow. Annual payments under the promissory note were set in the amount of $5,367 to be paid to Grow each July 1 for a term of 15 years. The promissory note also included a prepayment penalty of 20 percent if the balance was paid off prior to July 1, 2005.

In the fall of 1996, Phillips was elected to the Miller County Board of Commissioners and began serving in that capacity in January 1997. Phillips has continued serving as a county commissioner since that date.

In 2000, Phillips decided to sell the Property. A complex, multi-party transaction was structured under which title to the Property ultimately was to be conveyed to Miller County so that the Property could be used as a county office building. The transaction involved Miller County and two corporations that managed the estate of a local family — the Union Investment Company, Inc. and the Ruth T. Jinks Foundation, Inc. The transaction was structured with the intent and purpose that the Property be deeded to Miller County without the use of any taxpayer funds, but in a manner that would compensate Phillips for the Property, would avoid having to pay the prepayment penalty to Grow, and would have tax advantages for the Jinks family estate.

On October 2, 2000, Phillips sold the Property to Union. As part of the sale, Union executed an Assumption Agreement whereby it agreed to assume and pay the outstanding indebtedness that Phillips owed to Grow, including any potential prepayment penalties. Grow did not sign or otherwise agree to the Assumption Agreement, and it is undisputed that Phillips remained liable on the original promissory note. See, e.g., *Commonwealth Land Title Ins. Co. v. Miller*, 195 Ga. App. 830, 832 (395 SE2d 243) (1990).

Two days later, on October 4, 2000, Union entered into a Capital Lease Agreement with Miller County under which Miller County acquired the right to use the Property as building space. Phillips executed the Capital Lease Agreement on behalf of Miller County. The terms of the Capital Lease Agreement had been unanimously approved by resolution of the Miller County Board of Commissioners the previous day. The parties dispute whether Phillips, who was chairperson of the board at that time, voted on the resolution or disclosed her interest in the transaction to her fellow commissioners.

Under the Capital Lease Agreement, Miller County agreed to make annual payments each July 1 in the amount of $5,367, the same due date and amount of the payments due from Phillips to Grow under the original promissory note. The Capital Lease Agree-

ment expressly provided:

> Both parties hereto acknowledge that the purpose of this lease is to facilitate a gift of the [Property] to Miller County, Georgia, and that this lease is a device to avoid a prepayment penalty to Hilda Grow, who holds a promissory note secured by a security deed on the [Property].

From 2000 to 2005, Miller County made its annual payments under the Capital Lease Agreement. Miller County made the payments directly to Grow rather than to Union. Prior to each payment, the Ruth T. Jinks Foundation donated funds to Miller County for the designated purpose of making the annual payment under the Capital Lease Agreement.

In July 2005, after the prepayment penalty no longer applied, Miller County paid off the remaining balance owed to Grow on the promissory note. It made the payment after the Ruth T. Jinks Foundation made a donation to Miller County for that designated purpose. After the promissory note was paid in full, Union conveyed title of the Property to Miller County by deed of gift.

Richardson, a resident and taxpayer of Miller County, subsequently filed the instant action against Phillips. He alleged that the multi-party transaction ultimately resulting in title of the Property being conveyed to Miller County "was a scheme in which [Phillips] illegally and unethically transacted business with Miller County utilizing Union as her agent and intermediary." More specifically, Richardson asserted that Phillips violated the local act creating the Miller County Board of Commissioners by having a financial interest in the Capital Lease Agreement in which Miller County was a party. See Ga. L. 1983, pp. 4594, 4603, § 14 (the "Local Act").[2] Section 14 of the Local Act provides:

> Officials not to be interested in contracts. No member of the board or any other county officer empowered to expend public or county funds for the purchase of goods, property, or services of any kind for public or county purposes shall be financially interested directly or indirectly in any contract to which the county is a party, either as a principal, surety, or otherwise; nor shall such member of the board, officer, partner, agent, servant, or employee of a firm of which he is

---

[2] Richardson also claimed that Phillips violated OCGA § 16-10-6. The trial court granted summary judgment to Phillips on the merits of that claim, but Richardson does not challenge that ruling on appeal.

a member or by whom he is employed purchase from or sell to the county any real or personal property, goods, or services. Any contracts made in violation of any of the foregoing provisions shall be illegal and the person who violates this section shall be removed from office upon proper proceedings instituted by any taxpayer of the county in accordance with the provisions of Code Section 36-1-14 of the OCGA, relating to the purchase of goods or property by interested county officers with county funds.

Id. See OCGA § 36-1-14.[3] Richardson sought a declaratory judgment that the multi-party transaction was illegal, and an order removing Phillips from office pursuant to Section 14 of the Local Act and OCGA § 36-1-14 (b).

Phillips answered and later moved for summary judgment on the ground that there was no actual or justiciable controversy authorizing the grant of declaratory relief because the multi-party transaction at issue had already been completed and the Capital Lease Agreement was no longer in force, rendering such relief moot. Phillips also argued that she could not be removed from office under Section 14 of the Local Act for two additional reasons. First, a majority of the Miller County Board of Commissioners had approved the Capital Lease Agreement. Second, Miller County had not been harmed by the transaction, since the funds for its lease payments came from a private philanthropic foundation rather than from taxpayers, and the Property itself was ultimately deeded to Miller County as a gift.

Richardson filed a brief in opposition and cross-moved for summary judgment in his favor. Richardson argued that his claims were not moot simply because the transaction had been completed and that he was entitled to an order removing Phillips from office under Section 14 of the Local Act as a matter of law. According to

---

[3] OCGA § 36-1-14 provides:

(a) No county governing authority, any member thereof, or any other county officer authorized by law to use public or county funds for the purchase of goods or property of any kind for public or county purposes shall purchase such goods or property from any store in which such county governing authority, any member thereof, or other county officer is an employee, or in which he is directly or indirectly interested, or from any person or partnership of which he is a member or by whom he is employed, unless by sanction of the majority of the members of the county governing authority or unless it is made clearly to appear that such individual, partnership, or owner of the store offers and will sell the goods or property as cheaply as or cheaper than the same can be bought elsewhere.

(b) Any county governing authority, any member thereof, or any county officer violating subsection (a) of this Code section shall be removed from office upon proper proceedings instituted by any taxpayer in the county. Any contract made in violation of subsection (a) of this Code section shall be illegal.

Richardson, Phillips violated Section 14 because she had a financial interest in the Capital Lease Agreement to which Miller County was a party, given that she remained liable on the original promissory note owed to Grow, which the annual lease payments made by Miller County were used to pay off. Richardson further argued that approval of the Capital Lease Agreement by the Miller County Board of Commissioners, and the fact that the transaction ultimately caused no financial harm to Miller County, were irrelevant for purposes of determining whether Section 14 of the Local Act had been violated and whether Phillips should be removed from office. Moreover, Richardson maintained that board approval made no difference in this case because Phillips had participated in the resolution approving the Capital Lease Agreement and had not disclosed her financial interest to the other commissioners.

After conducting a hearing, the trial court denied summary judgment to Richardson and granted summary judgment to Phillips based on its conclusion that the case should be dismissed under the mootness doctrine. The trial court expressly declined to rule on the merits of the respective summary judgment motions concerning whether Phillips should be removed from office under Section 14 of the Local Act, since the court believed that doing so would constitute an advisory opinion.

1. We agree with the trial court that Richardson's cause of action for declaratory judgment should be dismissed. Under the Declaratory Judgment Act, a trial court is authorized to enter a declaratory judgment "[i]n cases of actual controversy" and in "any civil case in which . . . the ends of justice require that the declaration should be made." OCGA § 9-4-2 (a), (b). See *Baker v. City of Marietta*, 271 Ga. 210, 213 (1) (518 SE2d 879) (1999); *City of Atlanta v. Southern States Police Benevolent Assn. of Ga.*, 276 Ga. App. 446, 452 (2) (623 SE2d 557) (2005). But a "[d]eclaratory judgment will not be entertained where the rights of the parties have accrued and the plaintiff faces no risk of taking future undirected action." *Chambers of Ga. v. Dept. of Natural Resources*, 232 Ga. App. 632, 634 (502 SE2d 553) (1998). See also *Baker*, 271 Ga. at 214-215 (1).

> The object of the declaratory judgment is to permit determination of a controversy *before* obligations are repudiated or rights are violated. As many times pointed out by this [C]ourt, its purpose is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light *before* he steps rather than after he has stepped in a hole.

(Citations and punctuation omitted; emphasis in original.) *Farm &*

*Home Life Ins. Co. v. Skelton*, 235 Ga. App. 507, 508 (510 SE2d 76) (1998). See also *State Farm Mut. &c. Ins. Co. v. Allstate Ins. Co.*, 132 Ga. App. 332, 334 (208 SE2d 170) (1974) (a declaratory judgment "represents a signal for the future, not a seal of approval (or otherwise) for the past").

Here, Richardson has failed to demonstrate that he was in need of guidance from the trial court to protect him from uncertainty regarding some future act or conduct that might affect his interests. The multi-party transaction at issue had already been completed, the Capital Lease Agreement was no longer in force, and the rights of all the parties had accrued. Richardson simply aimed to have the trial court decide the propriety of past conduct committed by Phillips. It follows that Richardson was not entitled to declaratory relief, which in this context would be nothing more than "an advisory opinion from the trial court as to which party would succeed on the merits of any claim" pertaining to the completed multi-party transaction. *Skelton*, 235 Ga. App. at 509. See *Baker*, 271 Ga. at 214-215 (1); *Trainer v. City of Covington*, 111 Ga. App. 425, 426 (142 SE2d 75) (1965).

2. We disagree, however, with the trial court that Richardson's separate cause of action for the removal of Phillips from office under Section 14 of the Local Act should be dismissed as moot.[4] See OCGA § 9-4-3 (a) (dismissal of a petition for declaratory judgment does "not affect the right of the party to any other relief, legal or equitable, to which he may be entitled"). "A moot case is one which seeks to determine an abstract question which does not arise upon *existing* facts or rights." (Citation and punctuation omitted; emphasis in original.) *Chastain v. Baker*, 255 Ga. 432, 433 (339 SE2d 241) (1986). See *Collins v. Lombard Corp.*, 270 Ga. 120, 122 (1) (508 SE2d 653) (1998). A case is considered moot if the parties' dispute has been resolved, such that "the issues involved have become academic or dead." Black's Law Dictionary 1008 (6th ed. 1990). See *C & S Nat. Bank v. Miller*, 134 Ga. App. 235 (214 SE2d 9) (1975); *Bankers Life*

---

[4] No other separate causes of action for relief were asserted by Richardson in his complaint. It is true that in his prayer for relief, Richardson also sought an order barring Phillips from holding county office in the future, requiring that she disgorge any benefits she received as a result of the multi-party transaction, and referring the petition to the appropriate district attorney for a criminal investigation. But these types of relief clearly were not authorized by Section 14 of the Local Act or OCGA § 36-1-14 (b), which only provide for the removal of the county official from current office. Furthermore, Richardson referred in his complaint to these types of relief as "other declaratory relief." Under these circumstances, the additional relief sought by Richardson was not independent from his cause of action for declaratory judgment, but was "specifically bottomed on the declaratory judgment sought." *Gay v. Hunt*, 221 Ga. 841, 846 (2) (b) (148 SE2d 310) (1966). Accordingly, because Richardson's cause of action for declaratory judgment was properly dismissed, his request for these other dependent forms of relief likewise was properly dismissed. See id.

*& Cas. Co. v. Cravey*, 90 Ga. App. 113, 119 (82 SE2d 150) (1954). Additionally, a case is considered moot "when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy," Black's Law Dictionary at 1008, or when the specific relief sought by the plaintiff is no longer available. See *Bd. of Commrs. of Richmond County v. Cooper*, 259 Ga. 785 (387 SE2d 138) (1990); *Citizens to Save Paulding County v. City of Atlanta*, 236 Ga. 125 (223 SE2d 101) (1976).

The parties' dispute over whether Phillips violated Section 14 of the Local Act, and whether she should be removed from office as a result, has not been resolved. Nor has this issue otherwise become abstract, academic, or dead simply because the multi-party transaction at issue has been completed and the Capital Lease Agreement is no longer in force. Likewise, completion of the transaction did not render the specific type of relief sought by Richardson — removal of Phillips from office — unavailable to him. The trial court thus erred in dismissing as moot Richardson's cause of action for removal of Phillips under Section 14 of the Local Act.

For these combined reasons, we affirm the denial of summary judgment to Richardson and the grant of summary judgment to Phillips on Richardson's cause of action for declaratory judgment. However, we vacate the trial court's denial of summary judgment to Richardson and the grant of summary judgment to Phillips on Richardson's cause of action for the removal of Phillips from office under Section 14 of the Local Act, given the trial court's erroneous legal conclusion that it was moot. We remand the case to the trial court for its consideration of the respective motions for summary judgment on the merits. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002); *Harris Ventures v. Mallory & Evans, Inc.*, 291 Ga. App. 843, 845 (2) (662 SE2d 874) (2008); *Henson v. Tucker*, 278 Ga. App. 859, 865 (2), 865-866 (3) (630 SE2d 64) (2006).

*Judgment affirmed in part and vacated in part, and case remanded. Miller, C. J., and Andrews, P. J., concur.*

DECIDED FEBRUARY 11, 2010.

*William D. Hall, David A. Webster*, for appellant.
*O'Quinn & Cronin, Michael A. O'Quinn*, for appellee.