72769, 72770. LaVEAU v. REPUBLIC HEALTH CORPORATION OF CENTRAL GEORGIA; and vice versa.
(351 SE2d 506)

BENHAM, Judge.

Appellee Republic Health Corporation of Central Georgia d/b/a Decatur Hospital, Inc., provided in-patient health care for appellant Pamela LaVeau for two months after she voluntarily admitted herself to the hospital for treatment. Upon admission, appellant signed a document agreeing to be responsible for the costs of her care, although she and the hospital's agents thought that the costs, except

for 20% of the first two weeks of treatment, approximately $1,200, would be paid by Blue Cross/Blue Shield, appellant's medical insurance carrier. After appellant was discharged from the hospital, Blue Cross/Blue Shield refused to pay for any of the care provided, claiming that appellant had a pre-existing condition that precluded coverage. There was no indication that appellee or appellant knew about the alleged pre-existing condition. Appellee sued appellant for payment of the $20,990.01 account and appellant answered, claiming appellee was estopped from recovery because it promised her that she would only have to pay $1,200 and that her insurance would cover the balance. After a bench trial, the trial court applied OCGA § 13-3-44 (a) and found appellant liable for $10,205.46. She appealed the judgment and appellee cross-appealed. We affirm the judgment on the main appeal and reverse on the cross-appeal.

1. Appellant contends that the trial court erred in failing to direct a verdict in her favor since no evidence was presented to show the medical services appellee provided were reasonable or medically necessary. We disagree. This case is similar to *Johnson v. Ga. Baptist Hosp.*, 166 Ga. App. 571 (305 SE2d 126) (1983). In both cases the appellants signed documents in which they accepted financial responsibility for the hospital services they would receive although they anticipated that their insurance would cover the greater portion of the costs. It was only after the insurer refused to pay the entire bill in *Johnson* and any portion of the bill here that disputes arose. Here, as in *Johnson*, appellant "[does] not contend the charges were not reasonable and necessary; but only that the plaintiff hospital could not recover until the charges had been shown to be reasonable and necessary." Id. at 572. This court went on to hold in *Johnson* that the hospital established a prima facie case in its favor when it showed every element of service and its cost, a prior agreement by the patient to pay for the hospital's services, and a failure to object to the billing, followed by a partial payment. The first three elements are present in the case before us, but neither the insurance company nor appellant has made a partial payment. However, appellant admitted in her answer that she was liable to appellee for some amount of money but disputed the amount appellant claimed was owed. At trial appellant admitted that she owed and was willing to pay for 20% of her first two weeks' bill, approximately $1,200. We find that her admissions are sufficient to make the hospital's prima facie case, and the enumeration is without merit.

2. Appellant also challenges the trial court's finding that she was liable for medical charges in excess of $1,200, since the hospital's agents represented to her that she would only be responsible for that amount and she relied on those representations to her detriment. As noted earlier, appellant signed a document entitled "Conditions of

Admission," which contained in paragraph 5 an agreement guaranteeing "payment of all fees and charges incurred by and for [her] from the date of admission. . . ." The document also provided that any insurance benefits payable to appellant were assigned to the hospital, and that "[appellant] understands that this agreement does not relieve [her] of any responsibility for charges not covered by this authorization if responsibility for payment of the account has been assumed pursuant to paragraph 5." Our review of the record does not show that the discussions appellant had with appellee's agents, who stated that most of the cost of her medical care would be covered by her insurance company, evinced an intent on appellee's part to release appellant from her written obligation to pay for the services she received if her insurance company did not pay as expected. Therefore, she was still bound under the contract she signed upon admission to the hospital. Moreover, since she voluntarily admitted herself to the hospital on a non-emergency basis, she had the opportunity to make a personal, direct inquiry of her insurer before admission to determine whether or not her care would be covered, and we see no fraud or other reason for her to have failed to do so. See *Barnes v. Levenstein*, 160 Ga. App. 115 (286 SE2d 345) (1981). Appellant stated at trial that she looked at her insurance contract before her hospital admission, determined that her care would be covered, and told the hospital's agent that she would be covered. We conclude that there could be no detrimental reliance on the hospital agent's statement two weeks later that appellant's treatment would be covered, since the agent did not tell appellant something she did not already believe or know. Compare *Irvin v. Lowe's of Gainesville*, 165 Ga. App. 828 (302 SE2d 734) (1983), cited by appellant, in which the person relying on the statements of assurance did not know and could not readily determine whether they were true. Appellant's contentions on the detrimental reliance issue are not meritorious.

3. Finally, appellant argues that the trial court erred in finding her liable for the entire amount of the first two weeks of medical services because the trial court's rationale was not supported by the evidence. The trial court found that appellant was liable for the first two weeks' charges in spite of the conversation she had with the hospital's agent when she was admitted to appellee hospital; appellant again contends detrimental reliance on the insurance coverage statement. The transcript shows that the agent's statement was made based on what appellant told the agent. Appellant testified, "I had told her that I was covered by Blue Cross/Blue Shield and what type of coverage that I had and she said that [$1,200] was what was normal for that type coverage." There was no showing that at that time the hospital's agent had any other information regarding appellant's insurance coverage. Therefore, the trial court's holding was supported by

the evidence.

4. The hospital's cross-appeal (Case No. 72770) challenges the trial court's curtailment of the amount of judgment against LaVeau on the promissory estoppel theory. The trial court relied on OCGA § 13-3-44 (a), which states: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." In its detailed order, the trial court found that the hospital breached its promise to LaVeau that she would be liable for only $1,200 because her insurance company would pay the balance, thereby inducing her to extend her stay at the hospital for a period longer than two weeks. It also found that LaVeau was remiss in failing to ask her insurance company personally whether she would be covered, particularly in light of the fact that the insurance company cited a pre-existing condition as the basis for denying the claim. The trial court's remedy for the hospital's alleged breach was to hold LaVeau responsible for the entire cost of the first two weeks of her hospitalization, and for approximately one-third of the costs accrued during the final six weeks of her hospitalization. While the trial court mentioned that LaVeau "executed an agreement to pay for her charges," it made no further reference to that agreement. As we noted in Division 2 of this opinion, LaVeau, through that agreement, agreed to be responsible for payment of the bill if it was not covered by any insurance she might have had, and neither of the conversations between the parties constituted a waiver of that contract provision. If there was any promissory estoppel, it involved Blue Cross/Blue Shield, since it purportedly stated to the hospital's agents that it would cover LaVeau's treatment but then did not do so. We agree with the hospital that the trial court should not have applied OCGA § 13-3-44 (a) to this situation. LaVeau was responsible for the entire bill under the written agreement, and judgment should have been entered against her for the entire amount of the bill. We therefore reverse and remand to the trial court with direction that it enter judgment against LaVeau for the entire amount of the hospital bill.

*Judgment affirmed in Case No. 72769. Judgment reversed and case remanded with direction in Case No. 72770. Deen, P. J., and Beasley, J., concur.*

DECIDED DECEMBER 2, 1986.

*R. Matthew Martin*, for appellant.

*Marilyn G. Alexander*, for appellee.