A00A0368. WATTS v. PROMINA GWINNETT HEALTH SYSTEM, INC. et al.
(530 SE2d 14)

MCMURRAY, Presiding Judge.

Maggie Watts was taken by ambulance to the emergency room of Gwinnett Medical Center ("Gwinnett") after sustaining injuries in a vehicular collision. She was treated and released. The total bill for services rendered was $786.10. Watts had health insurance coverage through Kaiser Permanente Insurance Company ("Kaiser"). Kaiser and Promina Gwinnett Health System, Inc., on behalf of its participating hospitals, including Gwinnett, have entered into an "Agreement for Hospital Services" ("Agreement"), which requires Gwinnett to charge a flat fee of $216 to Kaiser's insureds for "[a]ny treatment(s) performed in the emergency room that does not result in an

admission or any outpatient surgery." Gwinnett billed Kaiser $786.10; Kaiser paid $166; and Watts made a co-payment of $50, leaving a balance of $570.10. Gwinnett also filed a hospital lien in the Superior Court of Gwinnett County in the amount of $786.10. Watts later sued the tortfeasor and settled that action for $15,000. Kaiser asserted a subrogation claim for $539. Watts paid the hospital's lien in full and settled Kaiser's subrogation claim for $400. Gwinnett refunded $50 to Watts and $166 to Kaiser. Kaiser thus recovered a total of $566.

Watts then filed suit against Kaiser and Gwinnett. The allegations against Gwinnett include breach of contract for charging fees in excess of the flat fee set out in the Agreement and failing to pay attorney fees under OCGA § 15-19-14 (b); breach of good faith and fair dealing; violation of the Georgia Racketeer Influenced & Corrupt Organizations Act; conversion; fraudulent concealment; money had and received; and unjust enrichment. The claims were based on Gwinnett's recovery of $570.10 more than the flat fee in the Agreement. At the heart of this dispute is Article C, Compensation, Section C-1, which states in relevant part:

> *No Charges to Members*: Participating Hospitals will look solely to [Kaiser] for compensation for Hospital Services rendered to Members under this Agreement. . . . Participating Hospitals agree that in no event . . . shall Participating Hospitals bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against any Member for Hospital Services provided pursuant to this Agreement.

Gwinnett answered and counterclaimed for declaratory judgment, asserting affirmative defenses of waiver, estoppel, preemption pursuant to 29 USC § 1001 et seq., and accord and satisfaction. In its counterclaim, Gwinnett sought a declaration that the Agreement did not prohibit it from filing a lien to recover fees for services rendered to Watts out of her recovery from the tortfeasor. Gwinnett also alleged the assignment of benefits Watts executed in the emergency room permitted Gwinnett to recover full payment pursuant to the lien. The assignment states in relevant part:

> I hereby irrevocably assign and transfer to Gwinnett Hospital System and treating Physicians all benefits and payments now due and payable or to become due and payable to me under any insurance policy or policies. . . . I understand and acknowledge that this assignment does not relieve me of my financial responsibility for all hospital charges and treating Physicians charges incurred by me . . . , and I

hereby accept such responsibility, including but not limited to payment of those fees and charges not directly reimbursed to the Hospital and treating Physicians by any insurance policy. . . .

Summary judgment was granted to Gwinnett on all claims,[1] and this appeal followed. *Held*:

1. Watts' first and third enumerations will be considered together. She first enumerates as error the trial court's implicit ruling that the Agreement did not preclude Gwinnett from recovering, pursuant to its lien, the entire amount of its bill. In her third enumeration, she claims that the trial court erred in impliedly finding that the hospital's charges were reasonable. Her arguments are not persuasive.

Initially, we note that summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684).

Gwinnett filed a lien pursuant to OCGA § 44-14-470 (b), which provides that a hospital "shall have a lien for the reasonable charges for hospital . . . care and treatment . . . upon any and all causes of action accruing to the [injured] person to whom the care was furnished. . . ." Under the statute, Gwinnett had a valid lien on Watts' cause of action against the tortfeasor for the reasonable charges for the care it provided to Watts. *Thomas v. McClure*, 236 Ga. App. 622, 623 (1) (513 SE2d 43). As for Gwinnett's bill, "the hospital established a prima facie case in its favor when it showed every element of service and its cost, a prior agreement by the patient to pay for the hospital's services, and a failure to object to the billing, followed by [full] payment." *LaVeau v. Republic Health Corp. &c.*, 181 Ga. App. 106, 107 (1) (351 SE2d 506).

Viewing the evidence most favorably to Watts, the record reveals a bill showing all services provided and their costs, a guaranty of payment executed by Watts, and payment.

Under OCGA § 13-1-13,

[p]ayments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice

---

[1] Kaiser remains a defendant below and is not a party to this appeal.

used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

Pursuant to the voluntary payment doctrine embodied in the statute,

"the party seeking recovery must prove that the payment was not voluntarily made because certain material facts were not known at the time of payment or a valid reason existed for failure to determine the truth. (Cit.)" *Ins. Co. of North America v. Kyla, Inc.*, 193 Ga. App. 555, 556 (388 SE2d 530) (1989).

*Rod's Auto Finance v. Finance Co.*, 211 Ga. App. 63 (1) (438 SE2d 175).[2]

In the case sub judice, it is undisputed that Watts possessed all the material facts when she satisfied Gwinnett's lien in full. Indeed, she was represented by counsel, who certainly was in a position to determine the truth. Watts argues only that she was "required" to pay the lien upon settlement of her personal injury action, without offering any reason therefor. Accordingly, Watts cannot now complain that the hospital's charges either exceeded those permitted by the Agreement or were unreasonable.

No case cited by Watts mandates a contrary result. Unlike the case sub judice, the challenge to the hospital's bill was timely preserved in each cited case. *Labombard v. Samaritan Health System*, 275 Ariz. Adv. Rep. 28 (991 P2d 246), for example, is an interpleader action filed by an insurer to determine whether the hospital or the patient was entitled to funds remaining after settlement with the tortfeasor. In *Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425 (597 NW2d 462), the tortfeasor's insurer satisfied the hospital's lien over the patient's protest upon settlement of the patient's personal injury action against the tortfeasor, and the patient then sued the hospital to recover a disputed amount. In *Nahom v. Scottsdale Mem. Hosp.*, 180 Ariz. 548 (885 P2d 1113), the insured's estate sued to recoup

---

[2] See *Reich v. Collins*, 262 Ga. 625 (422 SE2d 846), vacated, 509 U. S. 918 (113 SC 3028, 125 LE2d 717), on remand, 263 Ga. 602 (437 SE2d 320) (voluntary payment of state income taxes on federal military retirement benefits precluded refund after tax was found unconstitutional); *Henson v. Columbus Bank &c. Co.*, 144 Ga. App. 80, 82 (3) (240 SE2d 284) (voluntary payment of demand notes barred recovery of money based on alleged breach of contract).

monies the decedent's two insurers paid to the hospital in excess of the flat fee the hospital had agreed to charge under its contract with one of the insurers. The contract did not contain a coordination of benefits clause. The court held that the hospital could not recover the excess fees because the contract stated that the hospital had agreed to accept the fixed amount "as payment in full for covered services."

Watts has cited no case in which a patient successfully challenged the hospital's bill after voluntarily paying it in its entirety. She has, therefore, waived any such challenge.

2. In her fourth enumeration, she alleges that the assignment of benefits clause she executed did not permit Gwinnett to recover its charges from her settlement with the tortfeasor. As we held in Division 1, having failed to object to Gwinnett's recovery from the settlement proceeds prior to payment of Gwinnett's lien in full, Watts has waived this complaint.

3. Next, she asserts Gwinnett improperly used its lien to collect nonhospital charges on behalf of Kaiser. In effect, she claims that Kaiser was overpaid $27. Any claim she may have in this regard must be asserted against Kaiser, not Gwinnett.

4. In her final enumeration, Watts contends that Gwinnett is required to pay a pro rata share of the attorney fees she incurred in obtaining a settlement from the tortfeasor on the basis that her attorneys made possible Gwinnett's full recovery of its bill. We disagree.

We note that the law firm of Harkins & Henry filed the hospital lien on Gwinnett's behalf, for which the firm received 15 percent of the $786.10 it collected. Therefore, Harkins & Henry deserves equal credit with Watts' counsel for obtaining full payment for medical services Gwinnett provided to Watts. Also, Gwinnett's payment was reduced by the attorney fees paid to Harkins & Henry. As Watts acknowledges in her appellate brief, it is well established that each litigant is generally obliged to bear his or her own attorney fees. *Dee v. Sweet*, 268 Ga. 346, 348, n. 1 (489 SE2d 823). That is what happened here.

Contrary to Watts' contention, *Ramsey v. Sumner*, 211 Ga. App. 202, 203 (3) (438 SE2d 676), does not support her claim. In *Ramsey*, the hospital and the patient's attorney were competing for insurance proceeds which were insufficient to satisfy both the hospital's lien and the attorney's lien. Construing OCGA §§ 15-19-14 (b) and 44-14-470 (b), the court ruled simply that the attorney's lien had priority over the hospital's lien. Accordingly, *Ramsey* does not obligate Gwinnett to pay a portion of Watts' attorney fees. In any event, as we held in Division 1, she has waived this claim by satisfying the hospital's lien without protest.

5. We now consider whether the trial court erred in granting

summary judgment to Gwinnett on its counterclaim for declaratory judgment. OCGA § 9-4-2 (c) provides that "[r]elief by declaratory judgment shall be available, notwithstanding the fact that the complaining party has any other adequate legal or equitable remedy or remedies." However,

> " '[a] declaratory judgment may not be granted in the absence of a justiciable controversy. (Cits.) "The object of the declaratory judgment is to permit determination of a controversy *before* obligations are repudiated or rights are violated. As many times pointed out by this court, its purpose is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light *before* he steps rather than after he has stepped in a hole. (Cits.)" (Cit.)' (Emphasis supplied.) *Loyd v. City of Irwinton*, 142 Ga. App. 626-627 (1) (236 SE2d 889) (1977)." *Oxford Finance Cos. v. Dennis*, 185 Ga. App. 177 (363 SE2d 614).

*Farm &c. Ins. Cos. v. Skelton*, 235 Ga. App. 507, 508 (510 SE2d 76).

In accordance with our holding in Division 1 that Watts has waived her claims against Gwinnett, it is clear that all possible rights between the parties have accrued and all possible obligations have attached. Thus, Gwinnett requires no direction from the trial court concerning its future conduct which might increase its liability or otherwise affect its interests with respect to Watts. We, therefore, reverse the grant of summary judgment to Gwinnett on its counterclaim for declaratory relief and remand to the trial court with direction that the counterclaim be dismissed.

*Judgment affirmed in part and reversed in part and case remanded with direction. Johnson, C. J., and Phipps, J., concur.*

DECIDED FEBRUARY 15, 2000.

*McKenney & Froelich, Jerome J. Froelich, Jr., David M. Kupsky, Spix, Krup & Reece, William R. Reece III*, for appellant.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Robert G. Tanner*, for appellees.

